**B.J. ALAN COMPANY, d.b.a. Phantom Fireworks, et al., Appellants,**

v.

**CONGRESS TOWNSHIP BOARD OF ZONING APPEALS et al., Appellees.**

[Cite as *B.J. Alan Co. v. Congress Twp. Bd. of Zoning Appeals*, 191 Ohio App.3d 552, 2010-Ohio-6449.]

Court of Appeals of Ohio,
Ninth District, Wayne County.

No. 07CA0051.

Decided Dec. 29, 2010.

</div>

Stephen W. Funk and Paul Lombardi, for appellants.

Timothy M. Burke, Emily T. Supinger, Martin Frantz, Wayne County Prosecuting Attorney, and Latecia E. Wiles, Assistant Prosecuting Attorney, for appellees.

BELFANCE, Presiding Judge.

{¶ 1} This matter is before this court pursuant to remand by the Supreme Court of Ohio. The Supreme Court of Ohio has reversed this court's decision in *B.J. Alan Co. v. Congress Twp. Bd. of Zoning Appeals,* 9th Dist. No. 07CA0051, 2007-Ohio-7023, 2007 WL 4554187 (*"B.J. Alan I "*), and has remanded the matter for consideration of whether the Congress Township zoning ordinance at issue is in accordance with the Wayne County Comprehensive Plan. *B.J. Alan Co. v. Congress Twp. Bd. of Zoning Appeals,* 124 Ohio St.3d 1, 2009-Ohio-5863, 918 N.E.2d 501, at ¶ 43 (*"B.J. Alan II "*). Because this court concludes that Congress Township's zoning ordinance is not in accordance with the Wayne County Comprehensive Plan, this court reverses the decision of the lower court.

## BACKGROUND

{¶ 2} Appellants, B.J. Alan Company, Zoldan Family Ohio Limited Partnership, and Phantom of West Salem, Inc. (collectively, "Phantom") sought to build and operate a state-licensed consumer fireworks store at the intersection of Interstate 71 and State Route 539 in Congress Township in Wayne County.

{¶ 3} Phantom applied for a zoning certificate but was denied one because the property was not zoned for business use under the township's 1994 zoning resolution.

The zoning resolution contains two zoning districts: A–Agricultural and B–Business/Industry. The zoning district map, incorporated into the zoning resolution, designates all land in the unincorporated areas of the township as A–Agricultural; no land is mapped B–Business/Industry. This meant that

although the zoning resolution allowed B–Business/Industry development, no landowner could simply obtain a zoning certificate for such development from the zoning inspector. Instead, a landowner seeking to undertake business or industrial development would have to either apply to the zoning commission for a change of district boundaries on the zoning map or seek from the board of zoning appeals a variation from the zoning resolution.

*B.J. Alan II* at ¶ 5. Phantom appealed to appellee the Congress Township Board of Zoning Appeals ("the BZA"), which held a hearing in November 2006. Among other things, Phantom asserted that the zoning resolution violated R.C. 519.02's requirement that a resolution must be "in accordance with" a comprehensive plan. The BZA affirmed the denial of a zoning certificate and denied Phantom's request for a variance. Phantom appealed to the Wayne County Court of Common Pleas, which affirmed the BZA's determination. Phantom then appealed to this court. See *B.J. Alan I*, 2007-Ohio-7023, 2007 WL 4554187. We reversed the decision of the lower court. Id. at ¶ 1. In reviewing the record, we noted that testimony indicated that the township had relied on the Wayne County Comprehensive Plan in developing its resolution. Id. at ¶ 14. However, it was also clear that Congress Township itself did not have its own comprehensive plan. Id. Thus, we concluded that "[t]he failure of the township to have a comprehensive plan render[ed] the zoning resolution invalid." Id. at ¶ 16.

{¶ 4} The BZA appealed our decision to the Supreme Court of Ohio, which accepted review. The court stated:

This case presents the question of whether the comprehensive plan required by the statute must be a plan developed by the township itself or whether the township may rely on a comprehensive plan created at the county level. We hold that a countywide comprehensive plan can fulfill the "comprehensive plan" requirement of R.C. 519.02.

*B.J. Alan II*, 124 Ohio St.3d 1, 2009-Ohio-5863, 918 N.E.2d 501, at ¶ 1. The court next examined "whether the Wayne County plan is a comprehensive plan and whether its breadth includes Congress Township." Id. at ¶ 32. The Supreme Court noted that the Wayne County Comprehensive Plan set out a study of the entire region, included comprehensive land use goals, and " * * * demonstrate[d] an intent to include Congress Township within its purview." Id. at ¶ 42. Therefore, the court concluded that "the Wayne County Comprehensive Plan constitute[d] a comprehensive plan for purposes of R.C. 519.02." Id. The Supreme Court thus reversed our decision and remanded the matter so that we could determine whether "the Congress Township zoning ordinance is indeed 'in accordance' with the Wayne County Comprehensive Plan." Id. at ¶ 43.

{¶ 5} The parties have rebriefed the issues, and Phantom has submitted five assignments of error for our review.

IN ACCORDANCE WITH A COMPREHENSIVE PLAN

{¶ 6} In Phantom's first assignment of error, it essentially asserts that the zoning resolution was not issued in accordance with Wayne County's comprehensive plan. We agree.

{¶ 7} This court previously discussed the standard of review in *B.J. Alan I*, 2007-Ohio-7023, 2007 WL 4554187, at ¶ 8–10, wherein we concluded that our review was de novo because the lower court had premised its decision on an issue of law. Id. at ¶ 10.

R.C. 519.02 [the statute at issue] allows for zoning in unincorporated areas of townships. It provides:

"(A) * * * Except as otherwise provided in this section, in the interest of the public convenience, comfort, prosperity, or general welfare, the board [of township trustees] by resolution, in accordance with a comprehensive plan, may regulate the location of, set back lines for, and the uses of buildings and other structures, * * * and the uses of land for trade, industry, residence, recreation, or other purposes in the unincorporated territory of the township, and may establish reasonable landscaping standards and architectural standards excluding exterior building materials in the unincorporated territory of the township."

*B.J. Alan II*, 124 Ohio St.3d 1, 2009-Ohio-5863, 918 N.E.2d 501, at ¶ 11–12, quoting R.C. 519.02(A).

{¶ 8} The zoning resolution at issue provides in Section 100:

The Township is hereby divided into two (2) districts known as:

"A" Agricultural District

"B" Business/Industry District

"A" Agricultural: These are areas of productive soils which are normally removed from urban development. Permitted uses include agriculture, residential, public and semi-public uses, non-commercial recreation and sand and gravel extraction, among others. Conditional uses requiring [BZA] approval include a wide range of relatively open uses.

"B" Business/Industry: This district includes the various types of commercial business, office and industrial uses.

Article III, Section 100, Congress Twp. Zoning Resolution of 1994.

{¶ 9} Notably, the text of the zoning resolution does not describe the locations of the A and B districts. While many of the terms listed in Section 100 are defined in Article X, and the permitted and conditional uses for the districts are listed in Article IV, much of the language of the resolution is confusing and at times inconsistent. For example, Section 100 states that sand and gravel extraction is a permitted use in the A district; yet, Article IV of the resolution,

which lists permitted and conditional uses for the A and B districts, does not include sand and gravel extraction as a permitted use in the A district. Instead, in Article IV, mineral extraction is listed as a conditional use requiring BZA approval. Moreover, Article X of the resolution does not define "sand and gravel extraction." The terms "commercial business" and "industrial" used in Section 100 are likewise not defined in Article X. Further, some of the words that are defined in Article X have definitions that are confusing and provide little clarification as to the meaning of the term. For example, the phrase "Accessory Use," which is a permitted use in both A and B districts, is defined as "[a] use of a building such as a garage naturally and normally incidental to, subordinate to, and devoted exclusively to the main use of the land or buildings." We are unsure how this definition clarifies the term. Thus, the text of the resolution fails to provide clear guidance to residents as to what uses they can make of their property.

{¶ 10} However, the most striking deficiency in the resolution is its failure to harmonize its text with the zoning district map. As noted by the Supreme Court, "[t]he zoning district map, incorporated into the zoning resolution, designates all land in the unincorporated areas of the township as A–Agricultural; no land is mapped B–Business/Industry." *B.J. Alan II*, 124 Ohio St.3d 1, 2009-Ohio-5863, 918 N.E.2d 501, at ¶ 5. As the zoning district map was incorporated into the resolution, it is properly considered part of the resolution. Thus, in determining whether the resolution is "in accordance with" the Wayne County Comprehensive Plan, we examine whether the text of the resolution and its incorporated map are in accordance with Wayne County's comprehensive plan.

{¶ 11} We begin with a short summary of the Wayne County Comprehensive Plan, which is self-described as "a *guide* for the long term promotion and development of the region [that] will be refined as staff time permits." (Emphasis sic.) The plan broadly covers many areas, including, but not limited to, land use, housing, and community facilities. With respect to land use, the plan discusses considerations to be taken into account when determining what use a particular portion of land should have. The overarching goal of the plan is to preserve prime agricultural lands while allowing for controlled and limited commercial and industrial development in appropriate areas. The plan discusses characteristics that land should possess if it is to be delegated to a particular use. For example, it describes "Highway or Regional Business" as being areas "usually in peripheral locations" that "are situated near major thoroughfares and their intersections." The plan describes "General Industrial" land as "[e]xisting well developed industrial areas plus sites which have excellent transportation facilities for manufacturing including rail and highway access." In addition, the plan contains a countywide map that offers suggestions for which areas it

recommends for commercial, industrial, agricultural, or residential designations. Notably, the map of the Wayne County Comprehensive Plan recommends that certain areas of Congress Township be designated both industrial and commercial. In fact, the general theme of the map is that most, if not all, townships include some nonagricultural land use. The BZA admits as much in its brief, noting that the Wayne County Comprehensive Plan "envisioned primarily agricultural uses in Congress Township with some smaller areas of residential, commercial and industrial uses."

{¶ 12} Thus, it would appear that the text of Section 100 of the zoning resolution, which purports to divide the unincorporated areas of the township into agricultural and business/industry districts, is in accordance with the Wayne County Comprehensive Plan. However, the zoning district map incorporated into the township's resolution does not provide for any business/industry district. Thus, the text of the resolution conflicts with its incorporated map. This conflict is even more pronounced in the instant matter because the resolution provides absolutely no explanation as to why the text of the resolution contradicts the map. Although the Wayne County Comprehensive Plan is very broad in scope, we see nothing in that plan itself that is internally inconsistent or that would recommend internally inconsistent zoning as part of its comprehensive plan. Therefore, the resolution in its entirety cannot be said to be "in accordance with" the Wayne County Comprehensive Plan.

{¶ 13} This court reaches this conclusion also by considering some of the general principles articulated by the Ohio Supreme Court in *Cassell v. Lexington Twp. Bd. of Zoning Appeals* (1955), 163 Ohio St. 340, 56 O.O. 313, 127 N.E.2d 11. We acknowledge that the facts of *Cassell* and other cases cited by the parties are distinguishable from the facts of the case at bar. For example, in *Cassell* the Supreme Court examined whether a comprehensive plan existed within the zoning regulation itself and was not faced with the question of whether a regulation complied with a separate and distinct plan. Id. at 346 ("The absence of any comprehensive plan in the regulation involved herein certainly opens the door to an arbitrary and unreasonable administration of the regulation"). The same appears to be true of *Bd. of Twp. Trustees Ridgefield Twp. v. Ott* (Jan. 21, 1994), 6th Dist. No. H–93–16, 1994 WL 17542. See id. at *4 ("Here, appellees testified that Section 201 of the Ridgefield Township Zoning Ordinance was the comprehensive plan for the township"); see also *Clegg v. Bd. of Zoning Appeals of Newton Twp.* (May 1, 1987), 11th Dist. No. 3668, 1987 WL 10755, at *4, quoting *Cassell* at 346. In addition, one of the cases relied on by the BZA, *Valley View Village v. Proffett* (C.A.6, 1955), 221 F.2d 412, does not even mention R.C. 519.02 (or its predecessors) and involves a municipality, not a township. Further, unlike the resolution of the case at bar, the ordinance at issue in *Proffett* stated,

" 'Nothing herein contained, however, shall require the immediate designation of all of the above districts upon the zone map, it being the intention to provide for said districts and to permit from time to time the creation and designation of said districts as the needs of the community may require.' " Id. at 414, quoting Valley View Village Zoning Ordinance No. 131. Here, there is no language in the resolution that harmonizes the text with the map.

{¶ 14} Nonetheless, despite the differences between this case and *Cassell*, we are guided by the broad principles outlined by the Supreme Court of Ohio. One such principle is the notion that a person should be able to examine a zoning resolution in its entirety and ascertain to what use property may be put. See *Cassell*, 163 Ohio St. at 345, 56 O.O. 313, 127 N.E.2d 11. While it is true that the map zones all of the land as agricultural, the text of the resolution provides for, and purports to divide the land into, two districts. This contradiction between the text and the map is confusing and creates ambiguity and uncertainty as to the use of the land. In addition, the absence of a business/industry district on the zoning map could very well result in piecemeal, nonuniform zoning, another concern of the Supreme Court in *Cassell*. See id. Congress Township's resolution provides for a business/industry district yet does not designate any such district on the map, thereby requiring anyone who desires to use his or property for a business or industrial use to request a variance or change of the zoning map. This individualized approach to determining which property should and should not be used for business or industry is the epitome of nonuniform zoning. The resolution thereby encourages nonuniform, arbitrary, and piecemeal zoning—the very result sought to be avoided in *Cassell* and a result that is not sanctioned by or in accordance with the Wayne County Comprehensive Plan. In light of all of the above, we conclude that the resolution at issue is not in accordance with the Wayne County Comprehensive Plan. Therefore, we sustain Phantom's first assignment of error.

## REMAINING ASSIGNMENTS OF ERROR

{¶ 15} In light of our resolution of Phantom's first assignment of error, we decline to address the remaining assignments of error. See App.R. 12(A)(1)(c).

Judgment reversed
and cause remanded.

WHITMORE and MOORE, JJ., concur.