[Cite as *Apple Group Ltd. v. Granger Twp. Bd. of Zoning Appeals*, 2013-Ohio-4259.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

APPLE GROUP LTD.

    Appellant

    v.

BOARD OF ZONING APPEALS
GRANGER TWP.

    Appellee

C.A. No.      12CA0065-M
                 12CA0068-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.     08CIV0090

DECISION AND JOURNAL ENTRY

Dated: September 30, 2013

HENSAL, Judge.

{¶1} Apple Group Ltd. appeals a judgment of the Medina County Common Pleas Court that denied its appeal from a decision of the Granger Township board of zoning appeals and declared that the Township's zoning resolution was constitutional as applied to land that Apple owns in the township. For the following reasons, this Court affirms.

I.

{¶2} In 2006, Apple purchased two adjacent parcels of land in Granger Township that together formed a rectangle slightly more than 88 acres in size. The land is zoned R-1, which requires each residential lot to be at least two acres. Apple wants to maximize the number of houses it can build on the land, but does not want to simply divide the parcels into 44 two-acre lots. Instead, it wants to concentrate the 44 houses on one part of the property and surround them with undeveloped open space. According to Apple, its plan conserves resources and preserves

the natural features of the land. Under Apple's plan, each housing lot would be, on average, approximately 5/6 of an acre in size.

{¶3} In 2006 and 2007, Apple consulted with the township's zoning commission about developing the 88 acres according to its plan. In particular, they discussed rezoning the land to the less-restricted R-2 designation or creating a new planned conservation development district. After several meetings, however, the zoning commission tabled the issue. Apple, therefore, explored other ways of accomplishing its goal.

{¶4} In September 2007, Apple submitted an application to the Township's board of zoning appeals, seeking 176 zoning variances, four for each of its 44 proposed lots. Specifically, it asked for a variance of the R-1 district's two-acre lot minimum, 175-foot minimum street-side lot frontage, 175-foot minimum continuous front yard width, and 15-foot side-yard setback requirement. After holding several hearings on the application, the board of zoning appeals determined that what Apple was seeking was, essentially, rezoning of its property. Explaining that it did not have authority to rezone township property, the board of zoning appeals denied Apple's variance application.

{¶5} Apple appealed the denial of its variance application to the Medina County Common Pleas Court, arguing that the board of zoning appeals had incorrectly refused to consider its application. It also argued that it was unconstitutional for the Township to apply its zoning regulations to Apple's property. The common pleas court bifurcated the administrative and constitutional issues. In October 2008, the court upheld the board of zoning appeals' conclusion that the board did not have authority to consider the variance application because the application was, in essence, an attempt to rezone the property. The court set Apple's constitutional claims for an evidentiary hearing.

{¶6} Meanwhile, Apple continued to seek permission from the Township to develop its property in accordance with its plan. After the board of zoning appeals denied its variance application, Apple asked the zoning commission to reconsider whether the 88 acres could be rezoned as a planned conservation development district. Following several hearings, the zoning commission decided that it would not recommend the rezoning of Apple's land. The Township Board of Trustees subsequently denied Apple's request to rezone its property.

{¶7} After the Township refused to rezone Apple's land to accommodate its development plan, Apple sued the Township, seeking a declaratory judgment that the Township's zoning ordinance is unconstitutional as applied to its land. Upon request of the parties, the common pleas court consolidated the declaratory-judgment action with Apple's administrative appeal, which was still pending.

{¶8} In November 2009, a magistrate held a hearing regarding the constitutional claims Apple made in its administrative appeal and declaratory judgment action. Following the hearing, she recommended that the common pleas court rule in favor of the Township. Apple objected, but the common pleas court overruled its objections and entered judgment in favor of the Township. Apple has appealed the judgment entered in both cases, assigning four errors.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT'S FINDING THAT GRANGER TOWNSHIP COMPLIED WITH R.C. 519.02'S REQUIREMENT THAT ITS ZONING RESOLUTION BE ADOPTED "IN ACCORDANCE WITH A COMPREHENSIVE PLAN" WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AS A MATTER OF LAW BY DECLARING THAT GRANGER TOWNSHIP COMPLIED WITH R.C. 519.02'S REQUIREMENT THAT ITS ZONING RESOLUTION BE ADOPTED "IN ACCORDANCE WITH A COMPREHENSIVE PLAN."

{¶9}    Apple argues that the Township's zoning resolution is invalid because it was not adopted in accordance with a comprehensive plan.  Revised Code Section 519.02 provides:

> [A] board of township trustees may regulate by resolution, in accordance with a comprehensive plan, the location, height, bulk, number of stories, and size of buildings and other structures, * * * percentages of lot areas that may be occupied, set back building lines, sizes of yards, courts, and other open spaces, the density of population, the uses of buildings and other structures, * * * and the uses of land for trade, industry, residence, recreation, or other purposes in the unincorporated territory of the township."

Apple argues that, under Section 519.02, "a comprehensive plan" covers more than just zoning. Rather, it is a township's chief policy instrument which sets forth goals, policies, and objectives regarding zoning, streets, public facilities, public programs, and public lands.  Apple argues that, because the Township does not have a comprehensive plan that is separate from its zoning resolution, the resolution is invalid.  Whether a zoning resolution complies with Section 519.02 is a question of law that this Court reviews de novo.  *B.J. Alan Co. v. Congress Twp. Bd. of Zoning Appeals*, 191 Ohio App.3d 552, 2010-Ohio-6449, ¶ 7 (9th Dist.) (*B.J. Alan III*).

{¶10}   Contrary to Apple's argument, this Court has held that a township's failure to have a comprehensive plan "which is separate and distinct from a zoning ordinance does not render unconstitutional a zoning ordinance."  *Reese v. Copley Twp. Bd. of Trustees*, 129 Ohio App.3d 9, 15 (9th Dist.1998); *BGC Props. v. Bath Twp.*, 9th Dist. Summit No. 14252, 1990 WL 31789 *4 (Mar. 21, 1990) ("Ohio law does not require a township to adopt a comprehensive zoning plan as a condition precedent to the enactment of zoning legislation.").  In *Reese* and *BGC Properties*, this Court noted its agreement with the Eighth District Court of Appeal's

decision in *Central Motors Corp. v. City of Pepper Pike*, 63 Ohio App.2d 34, 65 (8th Dist.1979), in which the Eighth District explained that, "although a comprehensive plan is usually separate and distinct from a zoning ordinance, it is possible for an ordinance in and of itself to be a comprehensive plan * * *." *See also Columbia Oldsmobile, Inc. v. City of Montgomery*, 56 Ohio St.3d 60, 67 (1990) (Brown, J., concurring) ("As many courts (including our own) have recognized, a well-drafted zoning ordinance can, by itself, constitute the 'comprehensive plan.'"). Accordingly, the fact that the Township does not have a separately designated "comprehensive plan" does not mean that it did not have authority to create a zoning resolution.

{¶11} The purpose of the "comprehensive plan" requirement is "to prevent 'piecemeal' or 'spot' zoning * * *." *Scioto Haulers, Inc. v. Circleville Twp. Zoning Bd. of Appeals*, 4th Dist. No. 80 CA 7, 1981 WL 6022 *1 (Sept. 18, 1981). A comprehensive plan allows someone purchasing property to "determine in advance to what use that property could be put." *Cassell v. Lexington Twp. Bd. of Zoning Appeals*, 163 Ohio St. 340, 345 (1955). It also prevents zoning laws and regulations from being "exercised in an arbitrary or unreasonable manner." *Id*. In *Cassell*, for example, the Ohio Supreme Court concluded that a zoning resolution that allowed one square mile of the township to be used for "farming, residential, commercial and recreational purposes," but failed to designate which parts of the affected area could be used for each or any of those uses, did not constitute a comprehensive plan. *Id*. at 345-46. The Supreme Court also noted that, although the township denied a request for housing permits, in part, because the proposed lots were too small, the zoning resolution made "no provision for lot sizes, setback building lines, sizes of yard, courts, and other open spaces or any other of the items permitted to be regulated by [the predecessor to Section 519.02]." *Id*. at 346. According to the Court, "[t]here being no yardstick in the regulation by which the zoning commission could possibly be

guided, we can come to no conclusion other than that the commission in this instance acted arbitrarily and unreasonably in refusing to issue the permits." *Id*.

**{¶12}** Apple argues that the more recent decisions of this Court and the Ohio Supreme Court in *B.J. Alan Co. v. Congress Twp. Board of Zoning Appeals*, 124 Ohio St.3d 1, 2009-Ohio-5863 (*B.J. Alan II)*, preclude a zoning ordinance from satisfying Section 519.02's "comprehensive plan" requirement. The issue before the Supreme Court in *B.J. Alan II*, however, was whether "the comprehensive plan required by the statute must be a plan developed by the township itself or whether [a] township may rely on a comprehensive plan created at the county level." *Id*. at ¶ 1. After determining that a township could rely on a countywide plan, the Supreme Court then considered whether the Wayne County plan that Congress Township had relied on was "a comprehensive plan and whether its breadth includes Congress Township." *Id*. at ¶ 32. The Supreme Court did not address whether a zoning ordinance itself could satisfy the comprehensive plan requirement. On remand, this Court recognized that *B.J. Alan* involved a different issue, writing:

> [T]he facts of *Cassell* and other cases cited by the parties are distinguishable from the facts of the case at bar. For example, in *Cassell* the Supreme Court examined whether a comprehensive plan existed within the zoning resolution itself and was not faced with the question of whether a regulation complied with a separate and distinct plan.

*B.J. Alan III*, 191 Ohio App.3d 552, 2010-Ohio-6449 at ¶ 13.

**{¶13}** Upon review of the decisions of this Court and the Supreme Court in *B.J. Alan II* and *III*, we conclude that they did not overrule this Court's holdings in *Reese* and *BGC Properties*. The fact that the Supreme Court held that a zoning resolution satisfies the "comprehensive plan" requirement if it is adopted in accordance with a county's master plan

does not mean that that is the only way that the requirement can be met. We, therefore, reject Apple's argument that a zoning ordinance cannot constitute a comprehensive plan.

{¶14} Apple next argues that the Township's zoning ordinance does not meet the requirements of a comprehensive plan and, therefore, it was not made "in accordance with a comprehensive plan" under Section 519.02. The definition of "comprehensive plan" has generated much debate.

> The requirement that zoning decisions be made 'in accordance with a comprehensive plan' was contained in the original Standard Zoning Enabling Act (SZEA) issued by the United States Department of Commerce in 1922. Approximately three-quarters of the states [including Ohio] have adopted some form of the SZEA, and typically include the 'in accordance with a comprehensive plan' requirement. The term 'comprehensive plan' was not defined in the SZEA, and so both its purpose and confines of legal sufficiency have not been well understood or enforced.

Hirokawa, *Making Sense of a "Misunderstanding of the Planning Process": Examining the Relationship Between Zoning and Rezoning Under the Change-or-Mistake Rule*, 44 Urb. Law. 295, 299-300 (2012).

{¶15} Two years after the United States Department of Commerce issued the final version of the SZEA, it issued the Standard City Planning Enabling Act, which gave local governments "the discretion to develop substantive planning policies." Attkisson, *Putting a Stop to Sprawl: State Intervention as a Tool for Growth Management*, 62 Vand. L.Rev. 979, 991 (2009); *see* R.C. 713.01 (allowing the creation of city planning commissions), R.C. 713.22 (allowing the creation of county planning commissions). The Standard Planning Act did not use the term "comprehensive plan" like the SZEA but did use the term "master plan." Sullivan & Bragar, *Recent Developments in Comprehensive Planning*, 44 Urb. Law. 615, 615 (2012). Because the Standard Planning Act makes planning optional, however, "most state courts [have been] reluctan[t] to require consistency between zoning regulations and a separately adopted land

use plan." Attkisson, 62 Vand. L.Rev. at 991. Instead, the majority view "is that comprehensive planning requires some form of forethought and reasoned consideration, as opposed to a separate plan document that becomes an overarching constitution guiding development." Sullivan & Richter, *Out of the Chaos: Towards a National System of Land-Use Procedures*, 34 Urb. Law. 449, 454 (2002). The minority view, on the other hand, requires "the comprehensive plan [to be] an independent document separate from the comprehensive zoning ordinance." Benintendi, Comment, *The Role of the Comprehensive Plan in Ohio: Moving Away from the Traditional View*, 17 U. Dayton L. Rev. 207, 217 (1991).

{¶16} As explained earlier, this Court has followed the majority view that a zoning resolution itself can satisfy the comprehensive plan requirement. Under the majority view, "the term 'comprehensive' has three meanings: (1) comprehensive in terms of addressing an entire geographic area; (2) comprehensive in terms of having an 'all-encompassing' scope; and (3) comprehensive as in a separate long-term planning document" as opposed to a temporary duration. Sullivan & Richter, *Out of the Chaos* at 453-454. To be "all-encompassing" under the second prong, a zoning ordinance must address a number of factors such as use, height, and area. *Id*. at 454. This Court's analysis is also guided "by the broad principles outlined by the Supreme Court of Ohio," which includes "that a person should be able to examine a zoning resolution in its entirety and ascertain to what use property may be put." *B.J. Alan III*, 191 Ohio App.3d 552, 2010-Ohio-6449 at ¶ 14. Accordingly, the resolution must "define with certainty the location, boundaries and areas of the * * * districts[.]" *White Oak Prop. Dev., L.L.C. v. Washington Twp.*, 12th Dist. Brown No. CA2011-05-011, 2012-Ohio-425, ¶ 16, quoting *Village of Westlake v. Elrick*, 52 Ohio Law Abs. 538, 541 (8th Dist.1948). In *White Oak*, the Twelfth District Court of Appeals determined that a township zoning resolution set forth a comprehensive plan because

the resolution and accompanying map: "(1) reflect current land uses; (2) allow for change; (3) promote public health and safety; (4) uniformly classify similar areas; (5) clearly define district locations and boundaries; and (6) identify the use(s) to which each property may be put." *Id*. at ¶ 46.

{¶17} In the instant case, the trial court adopted the decision of the magistrate, who concluded that the Township's zoning resolution had been made in accordance with a comprehensive plan. In her decision, the magistrate considered

> 1) whether an individual is able to examine the zoning resolution and ascertain to what use the property may be put; 2) whether the text of the zoning resolution is consistent with the zoning map which shows the location of the various zoning classifications, and 3) whether the zoning plan includes business or industrial zoning districts.

She found:

> [T]he Granger Township zoning resolution functions as a comprehensive plan. A review of the resolution shows that it covers many factors, including, but not limited to land use, commercial development and conditional zoning terms. It sets forth specific goals and embodies the vision of the residents of the township for future development. The goal of the resolution is "to promote and protect the health, safety, morals and welfare of the residents of the unincorporated area of Granger Township * * * and to conserve and protect property and property values, and to provide for the maintenance of the rural character of [the] Township, and to manage orderly growth and development in said Township" while allowing for "reasonable flexibility for certain kinds of uses."

She also found that the

> resolution is general in nature but it also contains specific zoning districts to manage growth and ret[ain] the rural character of the township. The resolution provides the information needed for property owners to make decisions about public and private investment. It also provides a basis for zoning and conditional use decisions which will control spot zoning."

The trial court adopted the magistrate's findings, finding them to be "correct."

{¶18} Apple argues that the trial court's findings were against the manifest weight of the evidence. When reviewing the manifest weight of the evidence in a civil case, this Court

"weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001).

{¶19} The Township's zoning resolution and map divides the Township into six different districts: two residential, three commercial, and one industrial. There is also a planned development district that overlays part of the R-1 residential and C-2 general commercial districts. For each district, the zoning resolution sets out use, height, and area restrictions. It defines with certainty the location and boundaries of each zone. The zoning resolution also provides separate regulations regarding the placement of signs and wireless telecommunication towers.

{¶20} Upon review of the zoning resolution, we conclude that there is some competent credible evidence in the record from which the trial court could have found that it is "a comprehensive plan" under Section 519.02. *See Carlton v. Riddell*, 72 Ohio Law Abs. 254, 256 (9th Dist.1955) ("The Brunswick Township zoning resolution is comprehensive, for it provides for agriculture in all zones (which is usually the predominant use of township lands), business and commercial uses (to provide food, drug and department stores, and other such uses), and residences."). The zoning resolution addresses the entire geographic area of the Township, is all-encompassing in that it addresses use, height, and area, and it is intended to operate on a permanent basis to manage the long-term growth and development of the Township. In addition, a person examining the "zoning resolution in its entirety [can] ascertain to what use property may be put." *B.J. Alan III*, 191 Ohio App.3d 552, 2010-Ohio-6449 at ¶ 14. Further, the

county's deputy planning director testified that, even though the township does not have a separate comprehensive plan, the zoning resolution functions as a comprehensive plan. We, therefore, conclude that the court's decision is not against the manifest weight of the evidence. The trial court correctly determined that the zoning resolution was adopted "in accordance with a comprehensive plan" under Section 519.02. Apple's first and second assignments of error are overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AS A MATTER OF LAW BY DECLARING THAT THE GRANGER TOWNSHIP ZONING RESOLUTION, AS APPLIED TO PROHIBIT APPLE'S PROPOSED USE, WAS NOT ULTRA VIRES AND IN EXCESS OF THE TOWNSHIP'S STATUTORY ZONING POWERS UNDER R.C. 519.02.

{¶21} Apple next argues that the zoning resolution's R-1 district's area restrictions are not reasonably related to the two purposes that are allowed under Section 519.02. According to Apple, Section 519.02 allows townships to impose area restrictions only if they are "in the interest of the public health and safety." The magistrate determined that the area restrictions were permissible because they preserve the aesthetics of the community and, therefore, had "a substantial relationship to the general welfare of the public." Apple argues that, under Section 519.02, an area restriction is not allowed merely because it will promote the "general welfare" of the community. It, therefore, argues that the Township exceeded its statutory authority.

{¶22} Apple's argument fails because it cites language from an attempted amendment to Section 519.02 that was ruled unconstitutional. From 1957 to 2004, Section 519.02 provided that townships could enact zoning resolutions "[f]or the purpose of promoting the public health, safety, and morals" of its residents. In 2004, the General Assembly amended the section to allow zoning that is "in the interest of the public health, safety, convenience, comfort, prosperity, or

general welfare * * *." Later that same year, the legislature attempted to amend the language of Section 519.02 again. Under Senate Bill 18, use and area restrictions would be allowed only if they were "in the interest of public health and safety[.]" The bill was determined to be unconstitutional, however, under the single subject clause. *Akron Metro. Hous. Auth. Bd. of Trustees v. State*, 10th Dist. No. 07AP-738, 2008-Ohio-2836, ¶ 28. *See also Riebe Living Trust v. Concord Twp.*, 11th Dist. Lake No. 2011-L-068, 2012-Ohio-981, ¶ 22, 25-29 (agreeing that Senate Bill 18 was unconstitutional and explaining that a 2006 amendment to Section 519.02 did not reenact the amendments that were attempted in the unconstitutional bill).

{¶23} Because Senate Bill 18 was unconstitutional, the trial court did not err when it determined that the Township had authority to zone in the interest of the "general welfare." Apple's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED AS A MATTER OF LAW BY DECLARING THAT THE GRANGER TOWNSHIP ZONING RESOLUTION WAS CONSTITUTIONAL AS APPLIED TO PROHIBIT APPLE'S PROPOSED USE OF ITS PROPERTY.

{¶24} Apple also argues that the trial court incorrectly analyzed whether the Township's lot size and frontage requirements substantially further any legitimate zoning objective. It contends that the prohibition of its proposed use of the 88 acres does not substantially advance the district's "rural character" and "open space" objectives.

{¶25} "In an appeal * * * which challenges the constitutionality of a zoning ordinance as applied, the issue for determination is whether the ordinance, in proscribing a landowner's proposed use of his land, has any reasonable relationship to the legitimate exercise of police power by the municipality." *Mobil Oil Corp. v. City of Rocky River*, 38 Ohio St.2d 23 (1974), syllabus. While *Mobil Oil* involved a municipality, the parties agree that the same test applies in

this case. *See Valley Auto Lease of Chagrin Falls, Inc. v. Auburn Twp. Bd. of Zoning Appeals*, 38 Ohio St.3d 184, 185 (1988) (applying *Mobil Oil* in a case challenging the constitutionality of a township zoning resolution).

> In a constitutional analysis, the object of scrutiny is the legislative action. The zoning ordinance is the focal point of the analysis, not the property owner's proposed use, and the analysis begins with a presumption that the ordinance is constitutional. The analysis focuses on the legislative judgment underlying the enactment, as it is applied to the particular property, not the municipality's failure to approve what the owner suggests may be a better use of the property. If application of the zoning ordinance prevents an owner from using the property in a particular way, the proposed use is relevant but only as one factor to be considered in analyzing the zoning ordinance's application to the particular property at issue."

*Jaylin Investments, Inc. v. Moreland Hills*, 107 Ohio St.3d 339, 2006-Ohio-4, ¶ 18. "The challenge must focus on the constitutionality of the ordinance as applied to prohibit the proposed use, not the reasonableness of the proposed use." *Id*. at ¶ 20. Accordingly, the question in this case is whether the zoning resolution, insofar as it prohibits Apple from constructing a development of 44 homes on lots ranging from 0.7551 to 1.0934 acres with less than the required frontage and setback requirements has any reasonable relationship to the Township's legitimate exercise of authority under Section 519.02. *Mobil Oil* at 29; *Jaylin* at ¶ 20; *BGC Props. v. Bath Twp.*, 9th Dist. Summit No. 14252, 1990 WL 31789, *3 (Mar. 21, 1990).

{¶26} In adopting the zoning resolution, the Township's board of trustees made the legislative judgment that they wanted to maintain the rural character of the township. According to the zoning resolution, the term "rural" means "[l]ow-density housing, country/agrarian uses, and green space." The trustees determined that for housing to be considered low-density, each lot would have to be at least two acres. The resolution defines green space as "[u]ndeveloped open space lacking a structure including but not limited to fields, pastures, forest, and mowed

and maintained grass." Open space is defined as "[a]n area of land which is in its natural state, or is developed only for the raising of agricultural crops, or for outdoor recreation."

{¶27} The United States Supreme Court has recognized that it is a legitimate goal of governments to regulate housing density to "discourage the 'premature and unnecessary conversion of open-space land to urban uses' * * * and protect * * * residents * * * from the ill effects of urbanization." *Agins v. City of Tiburon*, 447 U.S. 255, 261 (1980), quoting Cal.Govt.Code 65561. Apple's proposed plan, although providing for more open space than a plan that simply divides the 88 acres into 44 two-acre parcels, clusters 44 houses on one part of the property on lots averaging less than one-acre in size. All together, the 44 homes would be on less than 37 acres of land.

{¶28} Apple argues that Section 519.02 does not allow townships to regulate lot size, only population density. What Apple overlooks though is that it is by limiting the permissible number of homes per acre that a township regulates population density "as only a certain number of residents would live in each home." *White Oak*, 2012-Ohio-425 at ¶ 26; *Ketchel v. Bainbridge Twp.*, 52 Ohio St.3d 239, 242 (1990) (explaining that establishing lot sizes is a commonly approved technique for limiting population density).

{¶29} Apple argues that its plan actually results in lower population density because the R-1 district allows duplexes while its plan does not. Under the R-1 district, however, the most duplexes that could be constructed on 37 acres is 18, resulting in a total of 36 households. That is less than the number of households that Apple proposed for the 37 acres. In addition, the two-acre lot and frontage requirements advance the Township's aesthetic interest of preserving its rural character. *Franchise Developers, Inc. v. City of Cincinnati*, 30 Ohio St.3d 28 (1987), paragraph two of the syllabus ("There is a legitimate governmental interest in maintaining the

aesthetics of the community and, as such, aesthetic considerations may be taken into account by the legislative body in enacting zoning legislation."); *Smythe v. Butler Twp.*, 85 Ohio App.3d 616, 622 (2d Dist.1993) ([T]he appearance of a community is closely linked to its citizens' happiness, comfort and general well-being."). According to a Township trustee, under Apple's plan, the houses would look just "too close" together. The county's deputy planning director also testified that areas with one-acre lots are generally not considered "rural."

{¶30} Upon review of the record, we conclude that the trial court correctly determined that the Township's zoning resolution was constitutional as applied to Apple's property. The lot size, frontage and setback requirements reasonably advance the Township's legitimate goal of maintaining its rural character. Apple's plan to cluster homes on less-than-one-acre lots conflicts with the Township's vision of what constitutes low-density housing and its vision of what constitutes a rural landscape. Apple's fourth assignment of error is overruled.

## CONCLUSION

{¶31} The trial court correctly determined that the Township's zoning resolution complies with Revised Code Section 519.02 and is not unconstitutional as applied to Apple's property. The judgment of the Medina County Common Pleas Court is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

JENNIFER HENSAL
FOR THE COURT

 

MOORE, P. J.
CONCURS.

BELFANCE, J.
DISSENTING.

{¶32} I respectfully dissent from the judgment of the majority as I would conclude that the evidence does not support the conclusion that the zoning resolution was adopted in accordance with a comprehensive plan as required by R.C. 519.02.

{¶33} The law in this area is far from clear, stemming in part from the lack of a definition of "comprehensive plan" in the statutory scheme. *See* Meck and Pearlman, *Ohio Planning & Zoning Law*, Section 4:39 (2013) ("Ohio courts remain uncertain about what a comprehensive plan is due to the lack of a precise definition in state statutes."). The phrase "in accordance with a comprehensive plan" originated in Section 3 of the 1926 Standard State Zoning Enabling Act ("SZEA"), which has been adopted by approximately 75% of the states. *See* Sullivan, *Recent Developments in Comprehensive Planning Law,* 43 Urb. Law. 823, 823

(2011); Meck and Pearlman at Section 4:38. The phrase is not defined in the SZEA either; however, a footnote to Section 3 attempts to clarify the phrase by providing that, "'[t]his will prevent haphazard or piecemeal zoning. No zoning should be done without such a comprehensive study[.]'" (Emphasis omitted.) Meck and Pearlman at Section 4:38.

{¶34} Notably, the individual who coined the phrase, Harland Bartholomew, indicated that the following studies should be made in advance of drafting a zoning ordinance: "existing use of land and buildings; new buildings erected by five-year periods; building heights; lot widths; front yards; population density; population distribution; topography; and computation of areas for different land uses." *Id.* Additionally, he believed that

> there should be available a major street plan, a transit plan, a rail and water transportation plan and a park and recreation plan; in other words, a comprehensive city plan. Without such a comprehensive city plan, the framers of the zoning plan must make numerous assumptions regarding the future of the city in respect to all of these matters without the benefit of detailed information and study. Zoning is but one element of a comprehensive city plan. It can neither be completely comprehensive nor permanently effective unless undertaken as part of a comprehensive plan.[1]

*Id.*

{¶35} Despite the above language, which would suggest that a comprehensive plan is a separate document apart from the zoning regulation, the trend in the past in Ohio has been to not require the existence of a separate document apart from the zoning regulations to satisfy R.C. 519.02. *See* Benintendi, *Comment: The Role of the Comprehensive Plan in Ohio: Moving Away from the Traditional View*, 17 U.Dayton L.Rev. 207, 220 (1991); *see also Columbia Oldsmobile, Inc. v. Montgomery,* 56 Ohio St.3d 60, 67 (1990) (Brown, J., concurring) ("As many courts (including our own) have recognized, a well-drafted zoning ordinance can, by itself,

---

[1] While Mr. Bartholomew was focused on city planning, which would likely involve elements that would not be involved in township planning due to the inherent differences between cities and townships, the underlying principles he articulates are equally applicable to township planning.

constitute the 'comprehensive plan.'"). This Court has even stated that "Ohio law does not require a township to adopt a comprehensive zoning plan as a condition precedent to the enactment of zoning legislation. Failure to have a zoning plan which is separate and distinct from a zoning ordinance does not render a zoning ordinance unconstitutional." (Internal citation omitted.) *BGC Properties, Inc. v. Twp. of Bath,* 9th Dist. Summit No. 14252, 1990 WL 31789, *4 (Mar. 21, 1990). Notably, *BGC Properties* and the cases like *Reese v. Copley Twp. Bd. of Trustees,* 129 Ohio App.3d 9 (9th Dist.1998), which rely on it, in turn rely on *Cent. Motors Corp. v. Pepper Pike*, 63 Ohio App.2d 34 (8th Dist.1979). The problem with relying on *Central Motors* in any case dealing with township zoning is that *Central Motors* involved a municipality. *See Central Motors.* Unlike townships, which are governed in part by R.C. 519.02, "[t]he legal power of Ohio municipal corporations to undertake activities which regulate land use is not dependent on the state legislature's enactment of enabling statutes." Benintendi at 214-215. Thus, there is no statutory requirement that municipalities zone in accordance with a comprehensive plan. *See Columbia Oldsmobile, Inc.* at 66. Therefore, the analysis undertaken in the municipal zoning cases is limited to analyzing whether the zoning regulations comply with constitutional limitations; however, in the cases involving townships, courts must also determine whether the resolution complies with the statute. Unfortunately, given the conflation of constitutional standards pertaining to municipalities and the separate statutory mandate pertaining to townships, Ohio jurisprudence has not truly focused upon the meaning of the plain language of R.C. 519.02 nor attempted to glean the legislative intent underlying its enactment.[2]

---

[2] For example, it is evident that in repeatedly employing the phrase "in accordance with a comprehensive plan" in R.C. 519.02, the legislature wished to avoid short-term, piecemeal development of Ohio townships. As such, the legislature, in mandating the "comprehensive plan" requirement, recognized that proper long-range planning is essential to fostering and

Nonetheless, irrespective of whether the comprehensive plan is a separate document, or is ultimately housed within the ordinance itself, R.C. 519.02 expressly states that township zoning regulations must be "in accordance with a comprehensive plan[.]"

{¶36} Moreover, recent case law from the Ohio Supreme Court suggests that townships are required, pursuant to R.C. 519.02, to engage in some form of planning and study that would form the basis for the creation and adoption of their zoning regulations. *See B.J. Alan Co. v. Congress Twp. Bd. of Zoning*, 124 Ohio St.3d 1, 2009-Ohio-5863, ¶ 32-42 (noting that Wayne County's plan constituted a comprehensive plan as it "present[ed] a thorough study of the region and set[] forth comprehensive land-use goals for the county[]"). It would seem that, if the Supreme Court was inclined to take the position that a zoning regulation and a comprehensive plan were one and the same, it could have used *B.J. Alan* as an opportunity to clarify the law in this area. Thus, instead of examining whether the county's plan was a comprehensive plan, the Court could have chosen to examine the zoning regulations to see if they constituted a comprehensive plan. Some commentators have even suggested that *B.J. Alan* indicates that R.C. 519.02 requires that "zoning must be consistent with an independently prepared comprehensive plan that is adopted separately." Meck and Pearlman at Section 4:37.

{¶37} Even if a zoning regulation can still constitute the expression of a comprehensive plan, there are problems with taking this approach where there is no evidence that the township engaged in a thorough and long-range planning process. Viewing the zoning regulation as the functional equivalent of the comprehensive plan without more essentially renders the requirement that townships zone in accordance with a comprehensive plan "symbolic at best." Benintendi*, 17 U.Dayton L.Rev. at 227. This is so, because "[z]oning regulations which are not

maximizing economic development as such entails identifying and maximizing regional strengths as well as developing supporting infrastructure.

required to conform to a sound, long-range comprehensive plan are neither truly comprehensive in nature, nor do they provide necessary limitations upon local governmental bodies or adequate protection from possible arbitrary and discriminatory action to landowners." *Id.*

> [Absent such a requirement], a zoning board in Ohio may enact a comprehensive zoning ordinance or zoning amendment, either through authorization from the state via enabling legislation or through the home rule provision of the Ohio Constitution, and be assured of its validity so long as the ordinance or amendment is not violative of the due process or equal protection clauses of the United States Constitution.

*Id.* at 224. In other words, by eliminating any requirement of a separate comprehensive planning document, or at least evidence that a township actually engaged in a comprehensive, long-range planning process, townships can pass ordinances that technically pass constitutional muster but do not comport with the legislative directive that such ordinances be enacted "in accordance with a comprehensive plan." R.C. 519.02.

{¶38} While it would seem that the legislature envisioned a separate and comprehensive planning process culminating in a separate document called a comprehensive plan, I recognize the current state of this Court's precedent. Nonetheless, I would hold that, in order for a zoning resolution or ordinance itself to constitute a comprehensive plan, there must be some demonstration that the zoning resolution or ordinance is based upon information that would evidence long-range, comprehensive planning and that the resulting zoning resolution or ordinance was *intended* to constitute *the* comprehensive plan of the township. Absent some evidence that the township intended the resolution to actually be the ultimate expression of the comprehensive plan and that it engaged in comprehensive planning in developing the resolution, townships could create resolutions without gathering any pertinent information or conducting any long-range planning. Nonetheless, in situations where a zoning resolution is automatically deemed synonymous with a comprehensive plan, such resolutions are deemed in compliance

with R.C. 519.02 merely because the resolution *could* be viewed as a comprehensive plan. Just because a resolution could be a comprehensive plan does not mean that it was intended to be so when it was created. Likewise, just because a resolution *appears* comprehensive in that it provides for a variety of zoning, does not necessarily mean it was the product of thorough, comprehensive planning. Requiring evidence of the foregoing would help prevent townships from creating arbitrary, and piecemeal zoning – clearly at odds with the express directive of R.C. 519.02 – and would prevent townships from justifying their zoning after the fact.

{¶39} In the instant matter, I would conclude both facets are lacking. There is little discussion in the record concerning the development of the resolution at issue; thus, one cannot say the resolution was based upon information gathered from comprehensive planning. Moreover, while there is testimony that the zoning resolution is "used" as the comprehensive plan and that the zoning resolution "could function" as a comprehensive plan, there does not appear to be any testimony stating that, when the zoning resolution was created, it was intended to be the township's comprehensive plan. Instead, there is abundant testimony that Granger Township does not have a comprehensive plan and neither does Medina County. Additionally, I note that the zoning resolution at issue, which "function[s]" as a comprehensive plan, was adopted a little over a year after Granger Township adopted its prior zoning resolution. The adoption of a new zoning resolution every year would tend, in my mind, to support the notion that the zoning resolution was not based on long-term planning and was not intended to be a comprehensive plan. *See* Meck and Pearlman at Section 4.29 ("The essential characteristics of a plan are that it is comprehensive, general and long range."). Under these circumstances, I would conclude that Granger Township failed to follow R.C. 519.02 in enacting its zoning resolution and would reverse the judgment of the lower court. Accordingly, I dissent.

APPEARANCES:

SHELDON BERNS, BENJAMIN J. OCKNER, and GARY F. WERNER, Attorneys at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and WILLIAM L. THORNE and BRIAN M. RICHTER, Assistant Prosecuting Attorney, for Appellee.